**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**



| | | |
|---|---|---|
| TOON BOOM ANIMATION INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | SA06CA0058 OG |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | JURY DEMANDED |
| BAUHAUS SOFTWARE, INC. | § | |
| | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT

Plaintiff Toon Boom Animation Inc. ("Toon Boom") files this Original Complaint ("Complaint") against Defendant Bauhaus Software, Inc. ("Bauhaus") and would respectfully show the Court as follows:

### I.
### PARTIES

1.      Plaintiff Toon Boom is a Canadian corporation with its principal place of business at 7 Laurier Avenue East, Montreal (Quebec), Canada H2T 1E4.

2.      Defendant Bauhaus is a Texas corporation, which is doing business in the State of Texas.  Bauhaus has its principal place of business at 118 Broadway, Suite 317, San Antonio, Texas 78205.  Bauhaus may be served with process through its registered agent, Paul B. Ford, at his address, 118 Broadway, Suite. 317, San Antonio, Texas 78205.

### II.
### JURISDICTION AND VENUE

3.      The United States District Court for the Western District of Texas has original jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338 in that this matter is a civil action arising under the Constitution, laws, or treaties of the United States.  This

action is based on the Lanham Act, 15 U.S.C. §§ 1051, *et. seq.*, and related Texas laws governing trade secrets, unfair competition, and tortious interference with business relations.

4.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states in which the value of the controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391(b) because: (1) Defendant Bauhaus is a Texas Corporation; and (2) Defendant Bauhaus has its principle place of business in San Antonio, in the Western District of Texas. Defendant has been doing business in this judicial district at all relevant times by managing its corporate affairs in and advertising and selling their products and services, which are the subject of this dispute, from and in the Western District of Texas.

### III.
### STATEMENT OF CASE

6.     Since 1994, Toon Boom has been in the business of producing affordable, yet high quality animation software technology. Through innovation and unparalleled customer service, Toon Boom's unique name has become associated with the best in animation solutions. In 2005, Toon Boom recognized the possibility of integrating its software with that of a competitor, Bauhaus. It approached Bauhaus with this idea, and in the course of confidential discussions concerning a possible joint venture, shared these concepts with Bauhaus. Ultimately, Toon Boom decided not to form a business relationship with Bauhaus. Soon thereafter, Bauhaus initiated an advertising campaign on the internet and in print based on the slogan, "GOT TOON BOOM?" As part of this promotion, Bauhaus began offering software packages of its own products under the moniker "Toon Boom Crossgrade." This advertising campaign is directed solely at Toon Boom customers and requires these customers to submit information about

themselves and confidential Toon Boom product information to take advantage of the crossgrade deal.

7.    Despite Toon Boom's requests that Bauhaus immediately cease its unauthorized use of Toon Boom's name and proprietary information, Bauhaus has continued its use of the Toon Boom Crossgrade promotion.    Bauhaus' exploitation of Toon Boom's uniquely recognizable name misleads consumers into believing that this crossgrade is a Toon Boom product, that Toon Boom and Bauhaus are associated, or at the very least, that Toon Boom endorses Bauhaus' "Toon Boom Crossgrade" and Bauhaus' representations about that software package.  The idea of Toon Boom / Bauhaus product integration was developed by Toon Boom, and Toon Boom only shared this information with Bauhaus in the context of confidential discussions about a potential business association.  Bauhaus has used this trade secret, along with Toon Boom's customer list and confidential customer product information, to gain an unfair competitive advantage over Toon Boom.  Finally, Bauhaus' unlawful use of the Toon Boom name and confidential information to solicit business from Toon Boom customers amounts to tortious interference with Toon Boom's customer relations.

## IV.
## FACTUAL BACKGROUND

**A.    The Two Competing Companies**

8.    Toon Boom is a worldwide leader in the field of animation software technology. Its products are designed to create cost-effective, yet high quality animations and employ a variety of high-tech software tools to do so.  Toon Boom software also offers customized tools to handle workflow management and increase production efficiency.    These products, which include Harmony, Opus, Solo, Toon Boom Studio and Toon Boom Studio Express fulfill the animation production needs of individuals, small and large studios, and educational institutions.

Toon Boom additionally offers a multitude of animation production consulting and training programs. Through innovation, creativity, hard work and superior customer service, Toon Boom has earned an excellent reputation for its company and products. In fact, it was the recipient of the 2005 Primetime Emmy Award for technology achievement.

9.     Like Toon Boom, Bauhaus provides a variety of software products designed to increase the cost-efficiency and quality of animation production and 2-D special effects. Also like Toon Boom, Bauhaus targets individuals, studios and educational institutions, and it offers training and consulting to its customers. Bauhaus, however, has only recently entered the field of animation software and does not have the excellent and long-standing reputation that Toon Boom enjoys.

10.     "In 2005, Toon Boom executives recognized the potential for compatibility in the consumer versions of the software products of Toon Boom and Bauhaus. Although Toon Boom's products have far superior capabilities in many respects than Bauhaus' products, and enjoy an excellent and long-standing reputation in the industry, limited portions of Bauhaus' product could be integrated with Toon Boom's products in order to provide additional features to Toon Boom's consumer customers. Toon Boom never contemplated using Bauhaus' products with Toon Boom's line of high-end business products. In August of 2005, Toon Boom and Bauhaus engaged in informal discussions regarding a joint arrangement between the two companies, whereby certain aspects of the Bauhaus product could be integrated with certain consumer versions of Toon Boom's software. Despite its initial interest in a cooperative venture along these lines, Toon Boom ultimately informed Bauhaus that it was no longer interested in pursuing a business relationship.

11.     Toon Boom had expressly agreed with Bauhaus that the information exchanged during the parties informal discussions was to remain confidential.

12.     However, in violation of the confidentiality of the parties' negotiations, on January 3, 2006, Bauhaus issued a press release announcing the availability of several "crossgrade offerings" of Bauhaus products for owners of Toon Boon Software, incorporating the idea of Toon Boom and Bauhaus integration, which Toon Boom originally brought to the discussions. Following this press release, Bauhaus initiated an aggressive advertising campaign, aimed solely at Toon Boom software owners, which improperly and without permission relied heavily on Toon Boom's name and good will.

**B.     Bauhaus' Internet Marketing Campaign**

13.     In the first week of January, Bauhaus began running a prominent advertisement on its website claiming that its products are compatible with Toon Boom products. Specifically, Bauhaus' homepage displays a large box which contains a colorful, conspicuous animation displaying the words, in large type, "GOT TOON BOOM?," which quickly changes to "WE WANT YOU!" before offering special deals on Bauhaus software packages. Once the box prompting Toon Boom users to learn about the deals disappears, a recently added message stating that Toon Boom does not endorse the offer finally materializes.

14.     When a website visitor clicks on this box, he or she activates a "pop-up" window advertising the "Toon Boom Crossgrade." The pop-up window contains another large scroll prominently asking "GOT TOON BOOM?" Below these large letters is a very small, inconspicuous disclaimer stating: "This offer is not endorsed by Toon Boom Animation Inc." This disclaimer was only added to the pop-up window webpage after Toon Boom demanded that Bauhaus cease using Toon Boom's mark in its advertising campaign. Further, the initial version of the "Toon Boom Crossgrade" promotion used Toon Boom's logo as well as its name. The

logo was removed at approximately the same time the limited disclaimer was added, only after Toon Boom's initial demand.

15.     The "Toon Boom Crossgrade" is a promotion for a software package comprised of two Bauhaus products, Mirage and Animator's Toolbar, aimed specifically at existing Toon Boom customers.  In fact, the site states plainly that the offer is made "to all owners of Toon Boom Products for a limited time at the unheard of price of $395.00."  This "crossgrade" allegedly allows users to capitalize on a variety of strengths of each system and to use each system contemporaneously or jointly on single projects.

16.     These actions were undertaken by Bauhaus without Toon Boom's authorization, consent, or endorsement.

## C.     Bauhaus' Use of Toon Boom's Trade Secrets

17.     Visitors to the Bauhaus website are invited via links at the bottom of the "Toon Boom Crossgrade" page to view two .pdf (portable document format) files expounding on the Toon Boom Crossgrade.  The first of these documents is entitled "Toon Boom Integration Whitepaper: An Overview of the Benefits of Integrating Bauhaus and Toon Boom Products." Specifically mentioning Toon Boom's Opus, Harmony, Solo and Toon Boom Studio applications, this document cites several benefits a user may expect by integrating Toon Boom's software with Bauhaus' and contains an example "pipeline," suggesting both Bauhaus and Toon Boom tools to use during various phases of animation production.

18.     The compatibility of the products referenced in the "Toon Boom Crossgrade" promotion has never been tested by Toon Boom.  Product testing is a core component of Toon Boom's product development, and is necessary to determine whether the products are, in fact, compatible.  Because Bauhuas is, to my knowledge, not a licensed user of Toon Boom software,

<u>**ORIGINAL COMPLAINT**</u> **– Page 6**

Bauhaus is not in a position to have tested the compatibility of the products referenced in the "Toon Boom Crossgrade" promotion.

19.     The second .pdf document is entitled "Bauhaus / Toon Boom Integration Guide," and it purports to provide a technical overview for sharing files and integrating workflows between Bauhaus and Toon Boom products.  This document describes the basis behind Toon Boom technology and meticulously describes methods for transferring data between Toon Boom and Bauhaus.

20.     The Integration Guide contains information about the compatibility of the two products that was first recognized by Toon Boom, which Toon Boom only disclosed to Bauhaus in confidence, which had never been publicly disclosed, and which was not readily ascertainable. The ideas and methodologies for "integration" of Toon Boom and Bauhaus software were shared in the context of confidential discussions between Toon Boom and Bauhaus representatives when it appeared likely that the two companies may consummate a business relationship.  No such relationship ever arose from these discussions; consequently, Bauhaus remains a direct competitor with Toon Boom.

21.     Bauhaus has turned this confidential information, learned in the course of its confidential discussions with Toon Boom, into its own marketing model, with the ultimate purpose of increasing its own volume of sales and customer base.  Such action is severely detrimental to Toon Boom.

22.     Bauhaus has generated and made available these documents without Toon Boom's authorization or consent.

**D.     Bauhaus' Collection of Toon Boom Customer Information**

23.     To take advantage of Bauhaus' Toon Boom Crossgrade, Bauhaus website visitors are encouraged to follow links to two Bauhaus software packages.  Following these links brings

the website visitor to a separate web page entitled "Toon Boom Product Verification." The customer must enter his or her first and last name, his or her email address, the Toon Boom product he or she currently owns, and the customer's confidential serial number for this product. Only Toon Boom has access to the database linking the serial numbers to specific Toon Boom products.

24.    This deceptive process, whereby customers are given the false impression that Bauhaus has the approval of Toon Boom to collect this confidential product information, could allow Bauhaus to compile a detailed list of Toon Boom product owners, including their email addresses and a list of the specific Toon Boom applications they own, together with their product serial number information. This product serial information could allow Bauhaus to obtain additional confidential information about Toon Boom's customers and products through Toon Boom's website and customer service department.

25.    Contrary to the implications on the website, Toon Boom has not given Bauhaus authorization or consent for the latter's use of any "Toon Boom Product Verification." Bauhaus, by extensively using the Toon Boom name on its website, leads Toon Boom customers to believe that Toon Boom is authorizing, or at the very least acquiesces to, Bauhaus' solicitation of Toon Boom customer information. In reality, Bauhaus is simply stealing Toon Boom's customer information for its own competitive use.

**E.    Bauhaus' Print Campaign**

26.    Upon information and belief, Bauhaus has also pursued an aggressive print ad campaign. It has submitted for publication to *Animation* Magazine an advertisement for the Toon Boom Crossgrade. The advertisement resembles the internet animation, asking in large, prominent letters, "GOT TOON BOOM?," which is followed by, "WE WANT YOU TO GET YOUR HANDS ON A COPY OF MIRAGE." The advertisement makes the same special offer

<u>**ORIGINAL COMPLAINT**</u> **– Page 8**

of Bauhaus software to Toon Boom software owners as does its website.  It is scheduled to appear in the February 2006 issue of *Animation* Magazine.

27.    This advertisement contains no disclaimer or other statement indicating that Toon Boom does not endorse the Toon Boom Crossgrade promotion.

28.    Bauhaus has created and submitted this advertisement without Toon Boom's authorization, consent or endorsement.

**F.    Bauhaus' Direct Solicitation of Toon Boom's Customers**

29.    In addition to its targeted internet and print campaigns, Bauhaus has actively contacted Toon Boom's existing customers in an attempt to solicit business.  Specifically, Bauhaus has sent owners of Toon Boom software emails, the subject line of which states: "Got Toon Boom? Get Mirage!"  The text of the email describes the Toon Boom Crossgrade offer of Bauhaus products at a special price.

30.    This email message contains no disclaimer or other statement indicating that Toon Boom does not endorse the Toon Boom Crossgrade promotion.

31.    Bauhaus has sent this email to Toon Boom customers without Toon Boom's authorization or consent.

**G.    The Dispute**

32.    On January 4, 2006, the day after Bauhaus' press release announcing the crossgrade offerings, Toon Boom, through its Montreal counsel, sent Bauhaus a letter (via fax, email, and delivery service) reminding Bauhaus that Toon Boom had not authorized Bauhaus to use Toon Boom's trademarks, confidential information, or customer information.  The letter further demanded that Toon Boom cease all conduct violative of Toon Boom's rights, including using its company and product names, disclosing Toon Boom's confidential, proprietary information, collecting information from Toon Boom customers, and offering discounts to Toon

Boom product owners.  Finally, the letter demanded that Bauhaus issue a press release stating that the crossgrade promotion was not authorized by Toon Boom.

33.     On January 8, Bauhaus, through its local counsel, responded to Toon Boom's cease and desist letter, stating that Bauhaus had not violated any of Toon Boom's rights and that it would continue in its present course of action.

34.     In fact, the only change in Bauhaus' course of action in response to Bauhaus' cease and desist letter with regard to the crossgrade was to include inadequate disclaimers on its webpage, stating that Toon Boom does not endorse the crossgrade offer.  While certainly an acknowledgement by Bauhaus that its actions were improper, this paltry attempt to correct its injustice is grossly insufficient.

35.     On January 9, Toon Boom, through its Texas counsel, sent Bauhaus a second cease and desist letter, again demanding that Bauhaus cease all conduct violative of Toon Boom's rights.

36.     To date, Toon Boom has received no written response, and Bauhaus' "Toon Boom Crossgrade" marketing campaign, direct contact with Toon Boom's clients, and use of Toon Boom's confidential information has continued.

**H.     Immediate and Irreparable Harm**

37.     Bauhaus provides substantially similar products and services to those of Toon Boom.  Both companies compete for the same customers.  Bauhaus' wrongful actions have resulted in substantial, immediate, irreparable harm to Toon Boom.  Specifically, Bauhaus' use of Toon Boom's company name has caused consumer confusion by incorrectly suggesting that Toon Boom is associated with Bauhaus or otherwise endorses Bauhaus' crossgrade offer.  Indeed, Toon Boom has received feedback from its customers indicating their confusion over the

source of the "Toon Boom Crossgrade." Toon Boom, however, is unable to control the quality of Bauhaus' services and representations.

38.     Bauhaus' use of Toon Boom's trademarked name and references to Toon Boom products have diluted the value of Toon Boom's unique mark and have injured Toon Boom's reputation and good will, which Toon Boom has cultivated over many years by offering superior products and service.

39.     Bauhaus' aggressive marketing campaign is designed to attract Toon Boom customers to Bauhaus at Toon Boom's expense. Indeed, the crossgrade campaign is targeted solely at Toon Boom customers. Toon Boom may lose and perhaps has already lost customers to Bauhaus because of the latter's wrongful conduct.

40.     Due to Bauhaus' disclosure of Toon Boom's trade secrets, Toon Boom may lose and perhaps has already lost the competitive advantage into which it had invested extensive time and resources. Bauhaus' exposure to the worldwide marketplace of Toon Boom's ideas of suite integration may damage the value of Toon Boom's confidential information.

41.     Toon Boom has no adequate remedy at law to address the injuries it has sustained at the hands of Bauhaus. Therefore, Toon Boom hereby applies for a temporary restraining order and seeks, in addition to monetary damages, a preliminary and permanent injunction prohibiting Bauhaus from further engaging in the above wrongful acts.

## V.
## CAUSES OF ACTION

### A.     Lanham Act Violations

42.     Toon Boom and its predecessors have owned and operated a business, in interstate and international commerce, engaged in creating and developing animation software solutions since at least as early as June of 1994.

43.    Since as early as June of 1994, Toon Boom and its predecessors have continually offered its animation software, as well as its training and consulting services, in interstate commerce under the wordmark *Toon Boom*.

44.    As a result of Toon Boom's marketing of its services and the extensive advertising for sale of its computer animation products under the mark, *Toon Boom*, this mark has become extremely well-known in interstate commerce as the source for Toon Boom products and services. Customers and potential customers in interstate commerce have come to identify Toon Boom products and services by its mark and thereby distinguish similar services of others from those of Toon Boom. In fact, this distinctive mark, *Toon Boom*, has come to identify Toon Boom as the source of its services in the minds of the general public.

45.    Toon Boom has sold tens of millions of dollars worth of computer animation software and has spent millions of dollars in connection with the advertising of its software under its mark all over the world. Toon Boom has continuously engaged in extensive advertising of its animation software, using a wide variety of advertising modes.

46.    Toon Boom's use of the mark in the field of animation software technology has been substantially exclusive. As a result of this exclusivity of the mark, the mark's innately distinctive and unique character, and the long and widespread use by Toon Boom of the mark, there is substantial recognition and association of the mark with Toon Boom by the consuming public for affordable, high quality animation software.

47.    In addition, Toon Boom has submitted applications for registration of the trademarks "Toon Boom" and "Toon Boom Studio" with the Canadian Intellectual Property Office. It has also submitted an application for registration of the trademark "Toon Boom

Studio" with the United States Patent and Trademark Office.  These applications are currently pending.

48.     Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), is designed to prevent consumer confusion as to the relationship between a trademark holder (whether or not the trademark is registered) and a competitor with regard to any association between the two, or with regard to the source or sponsorship of the competitor's products.

49.     Bauhaus' consistent, conspicuous use of Toon Boom's mark in connection with the sale of Bauhaus products, particularly its offering of Bauhaus products under a package labeled the "Toon Boom Crossgrade," creates the impression that these two competitors are somehow associated.  This unauthorized use is also likely to lead to confusion or mistake as to the source of Bauhaus' software or, at the very least, to result in the mistaken belief that Toon Boom endorses or sponsor's Bauhaus advertising campaign and "Toon Boom Crossgrade" promotion.

50.     While Bauhaus' actions are confusing, they more accurately described as misleading.  Bauhaus has used, without permission, Toon Boom's name and reputation to draw people to its website, which communicates the notion that Toon Boom has sponsored the Bauhaus software,  authorized the crossgrade promotion, or has otherwise endorsed the company or products.

51.     Defendants' acts of unfair competition in violation of the Lanham Act are irreparably injuring Plaintiff's good will and eroding Plaintiff's share of the market and, unless enjoined by this Court, will continue to do so.  Therefore, pursuant to 15 U.S.C. § 1116(a), Plaintiff is entitled to temporary and preliminary injunctive relief to prevent Defendant's continuing acts of unfair competition.

**B.     Common Law Trademark Infringement and Unfair Competition**

52.     Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs.

53.     Beginning as early as January 3, 2006, Defendant adopted and used Plaintiff's distinctive, trademarked name, *Toon Boom*, in connection with the promotion and sale of Defendant's own products, and this mark has been used continuously by Defendant since that time.  Defendants' unauthorized use of Toon Boom's mark constitutes infringement of Toon Boom's common law trademark rights in the mark.   As a result of the infringement by Defendants, Plaintiff has suffered, and is suffering, injury and damage in an amount yet to be determined.

54.     Defendant's continued, prominent use of Plaintiff's mark is intended to mislead the public into believing that Toon Boom is associated with Bauhaus or otherwise endorses Bauhaus' use of the Toon Boom name.  This is likely to lead to confusion and mistake and therefore represents unfair competition. The inadequate disclaimers located inconspicuously on the Bauhaus webpage are insufficient to prevent or remedy this confusion.  As a result of Defendant's continuous use of Plaintiff's Mark, Plaintiff has suffered, and is suffering, injury and damage in an amount yet to be determined.

55.     Upon information and belief, the acts of infringement and unfair competition by Defendant have resulted and are currently resulting in substantial unjust profits and unjust enrichment on the part of Defendants in an amount yet to be determined.  Such acts of unfair competition and trademark infringement are irreparably injuring Toon Boom's business and good will.  For such harm, Toon Boom has no adequate remedy at law, and therefore Toon Boom seeks injunctive relief to prevent this type of injury from continuing.  Under the common law of

the State of Texas, Plaintiff is entitled to temporary and preliminary injunctive relief to prevent Defendants' continuing unfair competition and trademark infringement.

56.     Additionally or in the alternative, Toon Boom seeks an accounting and damages. The amount of damages is unliquidated and incapable of calculation at this time.

## C.     Common Law Misappropriation of Trade Secrets

57.     The concept of integration of Toon Boom and Bauhaus software, as well as the particular methods of integration, technical procedures, and applications associated with this integration form a compilation of data that is considered a trade secret under Texas law.  The overarching idea and its technical aspects were developed by Toon Boom personnel.  This idea was novel and neither generally known nor readily discoverable.

58.     The secrecy shrouding the integration concept was substantial.  Toon Boom did not share this idea with any outside individual or entity until it commenced discussions with Bauhaus about a possible joint association.  While the discussions between the companies about a potential business enterprise were "informal," they were conducted under an express agreement that the information shared between Toon Boom and Bauhaus would remain undisclosed to outsiders.   Consequently, Toon Boom's relationship with Bauhaus was a confidential relationship.

59.     Bauhaus has disclosed the proprietary information it learned during its confidential relationship with Toon Boom to the general public.  Bauhaus has not only based an entire marketing campaign around the concept of Toon Boom / Bauhaus integration but it has also, on its website and on the two .pdf documents it has created and made available on its website, detailed specific applications and advantages of the integration and has outlined the technical procedures necessary to actually accomplish integration.

60.     Furthermore, Bauhaus has wrongfully appropriated Toon Boom's confidential customer list and customer information, which are also trade secrets under Texas law.  Toon Boom has developed its customer list at considerable expense over the course of many years by offering products of the highest quality.  While Toon Boom has publicized the identity of some of its highest profile customers and made available testimonials of some of its satisfied customers, it has never openly shared its entire list of clientele with the general public nor made it readily ascertainable by the general public.

61.     Bauhaus, however, through its use of Toon Boom's name and proprietary information, could compile a list of Toon Boom customers that includes not only their names but their email addresses, the Toon Boom products they own, and the serial number on those products.  Indeed, its crossgrade campaign is directed solely at Toon Boom customers, and to take advantage of the crossgrade promotion at the substantially discounted price, Toon Boom customers must provide the above information to Bauhaus.

62.     Bauhaus has used Toon Boom's proprietary information to gain a competitive advantage over Toon Boom and other competitors.  Specifically, Toon Boom's integration concepts, which it disclosed to Bauhaus in confidence, has opened up an entire market for Bauhaus, namely, Toon Boom product owners, and has occasioned a complete, new marketing scheme.  Bauhaus' aggressive pursuit of Toon Boom's customer list and customer information has furthered enabled Bauhaus to diminish Toon Boom's rightful share of the market.

63.     Bauhaus' misappropriation of Toon Boom's trade secrets has resulted and is currently resulting in substantial unjust profits and unjust enrichment on the part of Defendants in an amount yet to be determined.  Such misappropriation is irreparably injuring Toon Boom's business and good will.  For such harm, Toon Boom has no adequate remedy at law, and

therefore Toon Boom seeks injunctive relief to prevent this type of injury from continuing. Under the common law of the State of Texas, Plaintiff is entitled to temporary and preliminary injunctive relief to prevent Defendants' continuing misappropriation of Plaintiff's trade secrets.

64.     Additionally or in the alternative, Toon Boom seeks an accounting and damages. The amount of damages is unliquidated and incapable of calculation at this time.

**D.    Tortious Interference with Potential and Continuing Business Relations**

65.     Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs.

66.     Through its violations of the Lanham Act, its common law infringement of Toon Boom's trademark, its unfair competition, and its misappropriation of Toon Boom's trade secrets, Bauhaus has interfered with both potential and continuing business relations that Toon Boom has enjoyed with its customers.   In fact, Bauhaus' wrongful advertising campaign is aimed specifically at Toon Boom customers.  The "Toon Boom Crossgrade" is nothing more than a discount on its own products available only to those who presently own Toon Boom software.

67.     Most blatantly, Bauhaus requires those seeking to take advantage of this offer to provide information not only about themselves but about the Toon Boom products they own. Also, Bauhaus has sent Toon Boom users emails offering them the "Toon Boom Crossgrade." These acts, which are nothing more than means of channeling Bauhaus' unauthorized use of Toon Boom's name and confidential information toward a specific audience, are independently tortious.

68.     In the field of computer technology in general, and in animation technology in particular, companies rely on customer loyalty to retain and increase business, since such technology constantly evolves and improves.  One of Toon Boom's most valuable assets is its diverse customer base, which ranges from individual animators, to educational institutions, to

high profile production studios. Bauhaus seeks to capitalize on Toon Boom's client development and to interfere with newly-created and longstanding customer relationships by wrongfully associating itself with Toon Boom and by using proprietary information it learned from Toon Boom in confidence.

69.     Potential existing and current customers of Toon Boom are being attracted to Bauhaus, Toon Boom's direct competitor, every day and will continue to do so as long as Bauhaus continues to employ its overly aggressive and tortious marketing campaign.

70.     Bauhaus' interference with Toon Boom's potential and continuing business relations has resulted and is currently resulting in substantial unjust profits and unjust enrichment on the part of Defendants in an amount yet to be determined. Such interference is irreparably injuring Toon Boom's business and good will. For such harm, Toon Boom has no adequate remedy at law, and therefore Toon Boom seeks injunctive relief to prevent this type of injury from continuing. Under the common law of the State of Texas, Plaintiff is entitled to temporary and preliminary injunctive relief to prevent Defendants' continuing interference with Plaintiff's business relations.

71.     Additionally or in the alternative, Toon Boom seeks an accounting and damages. The amount of damages is unliquidated and incapable of calculation at this time.

**E.     Temporary Restraining Order and Preliminary Injunction**

72.     Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs.

73.     The facts set out above establish that Defendants' exploitation of Toon Boom's trademarks, confidential information, and customer base is causing irreparable injury to Toon Boom. Moreover, it is abundantly clear that Toon Boom is likely to succeed on the merits of its claims, that the balance of hardships favors enjoining Defendants' further use Toon Boom's

<u>ORIGINAL COMPLAINT</u> – Page 18

name, confidential information, and customer base, and that granting such an injunction will not disserve the public interest.

74.    Moreover, the loss of customers each and every day, the continuing confusion that is being created on a daily basis, and the inability to control the quality of the services and products being provided by the Defendant each day all demonstrate that immediate and irreparable injury, loss or damage will result to the applicant before the Defendant or its attorneys may be heard in opposition.

75.    Accordingly, pursuant to Rule 65(b), Toon Boom seeks an immediate temporary restraining order restraining Defendant from using Toon Boom's name, confidential information, or customer lists in a prohibited manner, and hereby requests a Preliminary Injunction until the time of trial prohibiting the further use of the same.

## VI.
## CONCLUSION AND PRAYER

WHEREFORE, Plaintiff requests that a temporary restraining order issue restraining Defendant from capitalizing on the confusion it has created through the use of Toon Boom's name and trade secrets in conjunction with the marketing of Bauhaus products and in the gathering of Toon Boom customer information.  Following a hearing on the Application for Preliminary Injunction, Plaintiff requests that the Court make the temporary restraining order a preliminary injunction providing the relief requested in the temporary restraining order pending the final hearing and determination of the case.  Plaintiff further requests that after a trial or other final hearing on the merits, the Court:

(a)    issue a permanent injunction restraining Defendant from capitalizing on the confusion it has created through the use of Toon Boom's name and trade secrets.

ORIGINAL COMPLAINT – Page 19

(b)    enter judgment for Toon Boom for recovery of and from Defendant the actual, consequential, incidental, special, and enhanced damages requested in this Complaint including a disgorgement of all profits made by Defendant as a result of its wrongful acts and a recovery of all sums by which Defendant has been unjustly enriched, together with pre-judgment interest on such damages at the maximum allowable rate, and post-judgment interest on all amounts awarded until paid; and

(c)    enter judgment that Toon Boom be awarded from Defendant its costs and attorneys' fees incurred in connection with this action pursuant to 15 U.S.C. § 1117.

Toon Boom further requests such additional relief to which it may show itself justly entitled.

## JURY DEMAND

Pursuant to FED. R. CIV. P. 38, Plaintiff hereby requests a trial by jury on all counts.

DATED: January 17, 2006.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: _J. Clifford Gunter III_

J. Clifford Gunter III  (attorney-in-charge)
State Bar No. 08627000
Gayle A. Boone
State Bar No. 02628500

South Tower Pennzoil Place
711 Louisiana, Suite 2300
Houston, Texas  77002
(713) 223-2300 (Telephone)
(713) 221-1212 (Telecopier)

ORIGINAL COMPLAINT – Page 20

OF COUNSEL:

William W. Brookshire, III
State Bar No. 24001793
William J. Moore
State Bar No. 24051075

Bracewell & Giuliani LLP
500 North Akard Street, Suite 4000
Dallas, Texas  75201-3387
Telephone:  (214) 758-1000
Facsimile:   (214) 758-1010

ATTORNEYS FOR
TOON BOOM ANIMATION INC.

732323v.1